Good morning, your honors. May it please the court, Devin Burstein on behalf of Mr. Moser at council table with Mr. Barnett and Mr. Steinberg for the amicus. Your honors, in Blum, the Supreme Court said, where a plaintiff, or in this case a claimant, has obtained excellent results, his attorney should recover a fully compensatory fee. That is what should have happened in this case, but it didn't. Instead, the district court slashed Mr. Moser's fee request by 70%. What should the district court have done, in your view? The district court should have, following the submission of both detailed information on the hours and rate and no response, failure to meet the burden of rebuttal that this court imposes on the government, it should have credited fully the Lodestar calculation and then, because this is not a rare or unusual case, but a regular case, it should have imposed a presumptively reasonable Lodestar calculation as the attorney fee. Could the district court, having observed the proceedings, use its own knowledge to discount some of the hours? For example, I think the district court said that, in this case, counsel was the sole practitioner and some of the hours, put aside the hourly rate to be assigned. So let's assume you assigned the hourly rate of $500. Could the district court have said, well, yeah, it should be $500 and the number of hours expended was right, but a lot of the tasks would have been done by a $200 an hour lawyer at a different firm, so I can discount them somewhat. Well, Your Honor... But the court did say that, even though it made what you contend are other errors. Correct, Your Honor. And I would say no in this case because both this court and the district court have said that, in this case, there is a burden of rebuttal. If I can just directly quote from Blum for a minute, Petitioner failed to submit to the district court any evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted in the affidavits submitted by Respondent's counsel. It therefore waived its right to an evidentiary hearing in the district court. Well, I guess my worry about that is I can't find anything which would suggest that simply because the government didn't provide any evidence, it undoes the district court's burden, which I think is their burden to do, to determine if the fee is reasonable. Well, I think the district court has a very good idea. If you don't put on anything, it's as if you're said, it's over. And we got the government now who is the one who's putting out the fee, and it seems to me that, well, as in Velez, Judge Wallace said, despite the majority's unsupported assertion to the contrary, the district court has no precedent in limiting the scope of his inquiry on that issue. And I mean, I looked right at Velez, and frankly, I don't think it's binding on me at all, but I couldn't find any precedent either. It didn't seem to me that Blum got there. Well, Your Honor, and I take Your Honor's point. And let me say this. There can be, for example, a claimant submits an outrageous fee application. And perhaps for whatever reason, there's some, you know, let's take this step back in some kind of 1983 case, and maybe there's a problem between the client and the lawyer, and so the lawyer just says, I'm not going to oppose. Now, certainly in that situation, the district court would have some kind of obligation there to step in and say, well, the lawyer for the other side hasn't done anything, but I'm not going to let an outrageous fee be submitted to the district court. And that's kind of what the district court was saying here. I mean, I'm not saying it was outrageous. I'm just trying to say, I'm trying to put myself in the district court's position. And it seemed to me that the district court was saying, well, I've got to look through this and see if it is really, because it looks a little more than it ought to be. So I'm just putting my general duty to it. And I think there are objections that you make which are very good. I guess I'm just trying to follow up whether the district court can get away with saying, okay, I don't have to do anything. Government didn't do anything, so there's where I am. I suggest where we may be, which is that you suggest a rule that you would have the court follow. Let's assume for the moment that we're not bound by anything, but that we have a circumstance in which the fee is suggested. We don't re-examine the hourly rate or the number of hours. And the government doesn't oppose the fee and doesn't meet its burden. But when would you let the district judge say, this is outrageous, this is extraordinary, or I don't quite agree with this. It looks like a few more hours than I would have spent. What would your rule be under those circumstances? Should it be the district judge has discretion where he points to extraordinary circumstances, where the fee is outrageous, where he thinks it's too high based on his experience because he was in a large firm and he knows how they do it. What would your rule be that you would like us to adopt? I think something along the lines of what Your Honor has just indicated, that where a party fails to meet its burden of rebuttal, the district court should, as this Court indicated and as the Supreme Court indicated, credit the hours and the rate. If the opposing party fails to meet its burden of rebuttal, unless there is some circumstance the district court can point to why it should not do that. But get back to Judge Reinhart's question because you're asking us to draw a line somewhere. I want to know a workable way to draw the line. I start from the assumption that the district court has the discretion to credit the application in the absence of opposition. Here the opposition was that it should have been limited to the contingent fee. So let's assume the district court says that's wrong. I use my discretion now and I credit the application. I give you what you want. That's easy enough for me. That's an easy rule. The question is, can the district court, under what circumstances can the district court say, even though the government hasn't raised it, I see some things here that I'd like to reduce the application for. And my problem is I'm not sure what test you're proposing. You agreed with Judge Reinhart that extraordinary circumstances might allow it, but I have no idea what extraordinary circumstances are. So is it a — is the district court forbidden from doing it? Can it do it at some time or other? What's your rule? The rule would be the identical rule, I think, that we — that this Court applies in terms of the Kerr factors. And the Court says that, you know, except in the rare or extraordinary case, the lodestar figure is presumptively reasonable and that's what we'll go with unless there are some specific circumstances under which it could be adjusted otherwise. Well, but here — here what I find is the district court found specific circumstances — they may be right, they may be wrong — but they weren't the ones the government suggested. In other words, that's a little bit different than the normal Kerr case. The normal Kerr case, the other side comes up and says, look at the hours, Judge, there's too many of them, and the judge looks at them and says, yeah, I think you're right, I'll reduce them a little, or the hourly rate's too high, or whatever. Here, the government only opposes on the basis of contingency. That's correct, Your Honor. So under what circumstances can the district judge sue a sponte, if you will? Think of the reason — think of Kerr reasons to reduce — reduce the award. Again, Your Honor, I would suggest that the Court adopt, because it's within the same can go below or above the lodestar figure, which is the — which is — Go ahead. I'm sorry, Your Honor. I didn't mean to cut you off. Which is, as Judge Reinhart, I think, indicated in Morales, and certainly in the Camacho opinion, that it's the rare or unusual circumstance, and that's what we would point to. But if I could take a step aside from that, even if this is a rare or unusual case where the district court can go beyond the parties — the opposing parties' rebuttal or waiver — so let's just — let's just, if we could, assume that for one minute, that the district court wasn't bound by the government's failure to meet its burden of rebuttal, and that it could go to the lodestar calculation. Well, even in that case, the district court committed multiple errors in the lodestar calculation itself. The district court erred in both calculating the number of hours, and the district court erred in calculating the reasonable rate. And for either or both of those reasons, the fee application should be vacated. Well, then I understood further that you not only suggest that, but you also say, after once having computed the lodestar figure, there was another error in diminishing it further. Absolutely. Okay, let me ask you one more question about the first question. Yes, sir. Which has given me some heartburn here. Yes, sir. It seems to me the First Circuit says, doesn't matter what happens. That's the Foley case. Doesn't matter what happens. Where public funds are involved, or the public interest is otherwise implicated, the court has a duty to consider the application regardless. Why should we not take that approach? That's what the First Circuit suggested. I mean, if I don't, then I divide. I'm not saying I'm too worried about that on the Ninth Circuit. I'm just saying that seems to be, you've got to do it regardless. Why should we not take that approach? I think especially in terms of the CAFRA situation, when you are dealing with the that it has to matter, that if the government is put the burden of rebuttal, that they have to come forward with evidence, and they simply fail to do it. This is not an unsophisticated party. And they simply fail to do it. But there hadn't been a CAFRA case thus far that I can find where it's suggested that the government's argument was totally out of it. And that's why I'm saying that the government should not be putting the burden of rebuttal on a CAFRA case. There are other cases. I don't understand how the government got to where they got. But as it relates to me just bearing down on a CAFRA case, I couldn't find it. Your Honor. I mean, I don't think that's wise just because you could make an argument to put all your eggs in one basket and not make others. But now you're saying because they did that, I ought to just give the fee. Your Honor, that is our position. But I would certainly acknowledge there's some wisdom in the First Circuit's decision as well, because obviously, as Your Honor noted, there are public funds at issue, and the district court is specifically under this court's precedent and the Supreme Court's precedent directed to use its discretion. Can I ask you one question that's a little slightly different? Let me start by saying let's assume you're right, that the district court made a number of errors in its calculation of the Lodestar. Do those errors lead us to presume that the Lodestar that you proposed was correct or only that the one that the district court found was incorrect? In this case, they would lead, I believe, this court to determine that the Lodestar calculation that we presumed or that we submitted was correct. Let me ask a question about the hourly rates, because you had several affidavits from practitioners in the area, and they weren't all the same hourly rate, as I recall. So what hourly rate should the district court have chosen as a matter of law in this case? The one you proposed or an average? Let me tell you. I kind of think the district court should have looked at the other affidavits and said here's what I think the reasonable hourly rate in this area is, and I think it probably erred by choosing one that wasn't covered by any of the affidavits. But how do I choose one for the district court? So I say the district court is stuck with the one you chose, or does the district court have to go back and choose one? It's not simply the affidavits. It's the affidavits along with the other lawyers. It's the affidavits along with the affidavit of Mr. Barnett. And in this case, the affidavit suggests a range, as Your Honor indicated. Towards the lower end of that range is Mr. Barnett's $500 request. Towards but not at the absolute lowest end of the range, right? That's correct, Your Honor. So I guess that's what I'm asking. Should we say to the district court you should choose the hourly rate that Mr. Barnett had because it's within the range suggested, or should we say go choose one within the range suggested but we're not going to choose it for you? We would submit that the direction to the district court should be to go with the hourly rate that's supported by the affidavits and which Mr. Barnett says is the reasonable rate. Because it's unopposed. Essentially it's unopposed and it's reasonable. It's the two prongs. It's reasonable under the affidavits and it's unopposed. And so there's nothing to suggest. In terms of burdens, I think about the scale. And all the evidence here is weighing in Mr. Barnett's favor. It shows it's reasonable. The court's case law doesn't say it has to be. The court talks in other contexts about a range of reasonableness. And certainly there's a range of reasonableness. But in this case, we believe all of the evidence firmly supports Mr. Barnett's request. Do you want to leave your comment? I do, Your Honor. Okay. Thank you. Thank you. Unless there are further questions. Thank you, Your Honor. May it please the court. My name is Ben Steinberg. I'm counsel for AMICUS, Americans for Forfeiture Reform. Americans for Forfeiture Reform is a nonprofit group that aims to raise awareness about civil asset forfeiture abuse in the United States. We join in the arguments just presented by Moser's counsel. However, we'd also request that the court issue a published opinion overturning the district court's decision on an additional grounds. And that grounds is that the district court applied two main factors in slashing Moser's attorney's fees that run directly counter to the purpose of CAFRA. The purpose of CAFRA was to level the playing field between the government and property owners. Congress rightfully recognized that the reason so few property owners challenge wrongful forfeitures has little to do with their guilt and has much more to do with their inability to obtain effective counsel. Congress sought to remedy this by including in CAFRA a broad attorney's fees provision that liberalizes the awarding of attorney's fees and therefore makes it easier for victims of wrongful forfeiture to obtain the counsel they need to challenge the government. This levels the playing field. Yet if you look at the two factors that the district court used in this case to slash Moser's fee award, it is clear that those factors do not effectuate CAFRA's purpose of leveling the playing field. Rather, they do just the opposite. They tilt the playing field in the government's favor. The first of these factors is what we've termed the Rodney Danger field factor. This is the notion that an attorney should not be able to recover fees for time spent opposing motions that the district court feels merit little or no respect. This violates CAFRA's purpose, first and foremost, because it places property owners at a distinct disadvantage relative to the government. Well, let me ask a question about that. Can the district court say experienced forfeiture counsel ought to recognize how much time one ought to put in opposing a motion that doesn't have much merit and 20 hours is not the appropriate, I'm making up the numbers, 20 hours is not the appropriate amount of time to do this because experienced counsel should have been able to handle this in five. And can I add to that question, can the counsel take into effect how experienced the district judge is and what his views seem to be on the issue? Or does he have to assume that every judge is equally intelligent, has equal experience for the issue, and has an equal record of being sympathetic or unsympathetic to the issue? Maybe you want to answer the unadorned question first. Well, it's the same question, I suppose. Can the judge look at all the circumstances and say, including whether counsel ought to be comfortable with the judge's knowledge? And should the judge say to himself, well, I know what I think about this. It may be wrong, but counsel should know that I'm going to be wrong or that I'm going to be right. And so can the judge evaluate his own objectively how difficult it is to persuade him of that question? I say this because when I was a lawyer a long time ago, we had a case, a constitutional case, and we made 10 arguments in our brief. The last argument I was reluctant to make because I thought it had no merit. Well, the judge rejected the first nine arguments, and we won the case on the 10th. Should I have said, well, any reasonable judge would agree with the first three arguments, or should I spend more time and make arguments because the judge wasn't the brightest fellow and, as it turned out, he accepted the wrong argument? And you take our point, but I guess the question is, does a lawyer spend more time if he's in front of me and less time if he's in front of Judge Reinhart, who's smarter than me? Go ahead. But the least time in front of him. Oh, I don't know, given what we've got here. I mean, I guess I want you to answer the question because it seems to me that the statutory complex that you now suggest counsels against giving judges discretion, I don't find it in there that says that the discretion is gone. And as long as the judge follows the general formula outlined by us in setting the fee, I don't find anything in the statute to suggest that that is someplace I need to get in. Well, I think in analyzing what kind of factors are permissible under CAFRA, you have to take its purpose into account. So if that sort of analysis was allowed to happen, basically you'd have a double standard. The government would be allowed to aggressively litigate its positions with almost unlimited resources, and property attorneys would have to become sort of mind readers in trying to predict which government arguments the district court will respect and only respond forcefully to those arguments. Yeah, and you've run over your time, but what concerns me is the same question we're asking your colleagues, which is this. Assume that we thought the district court made an error here. Do we just say, well, I'm trying to think of it. It's like when you used to play tag. It's ollie, ollie, in's free. You get what you wanted because it made an error, or do we say go back and do it right? And that's what I'm struggling with in this case. Let me ask another question that relates to that. Judge Hurwitz said, I don't know what extraordinary circumstances are. Well, I don't either. I mean, but I find that test all the time that we use. I mean, what exceptions would there be? I mean, you argue that basically when Congress said the government has a burden or anyone has a burden of submitting affidavits, challenging figures, and if they don't, well, they failed in their burden. That must mean something. That doesn't mean that we now say, well, Judge, what do you think of it, or even try to challenge? If they don't challenge it, are you a third party that comes in and says, well, I'm going to challenge it? Well, let's assume that the court has some discretion. Clearly, it's not the same discretion as if the government had responded and tried to meet its burden and pointed out grounds. But to what extent does the court retain discretion to do what the party itself totally failed to do? Is it the same as if the party had answered? Is it different? What test would you apply? Well, in addition to the extraordinary circumstances test discussed earlier, I know that in the Fifth Circuit, the court in Sham, the case Sham, applied a shock to the consciousness standard, and I would submit that the courts defer to the parties unless the requested fees shock the consciousness, and that's one test that I believe the court could use. But if, in fact, there's evidence in the record that goes unchallenged, hasn't the district court every right to say whatever's in the record, that's as far as I can go? Yeah, absolutely. And so in this case, if the government doesn't want to put any evidence in, it seems to me that the district judge could look at all the evidence that counsel has put in the record but cannot depart from it because the government hasn't given them any chance to depart from it. So in this case, if one's looking at the hours, the judge can't say, well, I'm going to take my own idea of hours because there was no evidence about that. But there is evidence about what hours could be done or couldn't be done. There is evidence about what rates could be done or couldn't be done, and select from those who put on the evidence that which is reasonable. Doesn't that do what CAFRA has suggested? Your Honor, I don't think it does because I think that the idea here is to level the playing field. Well, I understand, but the leveling happened absolutely when no evidence was put in. And if you take the, I know you want to say the purpose, there are some of us who are not sure that there is a purpose that ought to be put into the statute. I'm not going to even say I'm there, but there's certainly one on the Supreme Court who doesn't believe in purpose. It's hard for us to then make those arguments. As Moser's counsel eloquently stated before, once the evidence has been put in and once the government has had an opportunity to rebut that evidence, I think the discretion does go on the district court. But I don't think the district court should try to overanalyze unopposed submissions to try to cut the fees more than it would unless it shocks the consciousness or unless there are extraordinary circumstances. Thank you, Captain. Good morning, police court. Bruce Smith on behalf of the United States. There's been a lot of concern expressed about what I did and did not present at the district court, and I can see that there were some errors I made in failing to assist the district court in examining the submission by Mr. Barnett. The reason for that was I was focused on the code section, 2465, which unlike the equal access to justice code section, doesn't just talk about reasonable attorney's fees. It says to pay the reasonable attorney's fees and litigation costs incurred by the claimant. And where I made my mistake was by following the code section and looking and I said, well, what did Mr. Moser incur? Well, he made an arrangement with Mr. Barnett that he would pay 33 cents on the dollar for every dollar that Mr. Barnett returned plus costs. Well, costs were taxed. And I looked at the end of the case. Well, Mr. Barnett was successful. He got all $28,000 back. And so Mr. Moser's reasonable attorney's fees and costs were the costs that were taxed plus 33 cents on the dollar, $9,333. No one is blaming you for making the argument. You know, it was a perfectly, well, I wouldn't say perfectly, but it was a plausible argument to make, and you had a right to make it and get a legal determination on the argument. But where I understand I made my mistake is I essentially forced Judge Burns to then carry the ball and go the traditional route. Well, let's assume it's not a mistake. Judge Reinhart's getting you off the hook here. Well, momentarily it was. No, it's an argument that certainly falls within the realm of arguments that counsel can make. Let's just assume that we think it's wrong. I did say plausible. Plausible. I ruined it perfectly. Plausible argument. Let's just assume that we think it's wrong, that limiting counsel to the contingency because that was the agreement is not what the Act requires. And I take in account that we're talking about $19,000 here. $28,000. Well, no, $19,000, because you wanted him to get $9.3, right? Yes, sir. You were talking about a difference of $18,000. So I also understand why the government lawyer might say, I got this one argument, but to tell you the truth, if we're talking about the difference between $28,000 and $24,000, I'm not going to spend my valuable time thinking about it. If I can knock them down to $9,000, that's terrific, but I'm not going to go quibble about hours. That's a plausible thing for counsel to do also. Well, that wasn't my motivation. I know, but on the record, that's what it looks like. And so why don't we just say the government made a choice here, a perfectly reasonable choice. Rather than expend lots of your valuable time fighting about $3,000 or $4,000, the government decided to go for a home run and try to get it reduced by $18,000. What was the request for counsel for attorney fees? $28,000. The request was $50,000 approximately. Okay, I'm sorry. I'm looking at the amount forfeited. You're right. But even so, we're not talking about, in the larger scheme of things, a ton of money. It's a lot of money for us, but it's not. Judge Hurwitz is absolutely right. We end up in these cases, not just forfeiture cases, we end up spending more money on the attorney fees issue than we do on the merits often. And, you know, on the merits they may get $5,000, and attorney fees may turn out to be $500,000. But I guess I ask the question that way because I could see myself defending a case like this saying, look, I could reduce the $54,000 to $40,000, but then it will go up on appeal and we'll be spending lots and lots of government time. If I can reduce it to $9,000, that would be a good thing. So I'll take my shot at my argument here, and if I don't win it, to heck with it. Why shouldn't we treat the case that way? Well, because Judge Burns recognized that all the other cases, you know, unlike my approach on it, all the other cases use the load star and go to the curve factor. So, you know, thank goodness Judge Burns followed the traditional path. I mean, he acknowledged my argument at the end of his decision, but he followed the traditional path, and I respectfully submit that he looked at the hours expended. He used a reasonable analysis. You can tell by his... How did he arrive at an attorney's fee rate? $300. The district judge... The magistrate judge is not... Let me just finish. The district court judge. Well, the district court judge accepts the... The magistrate judge had nothing to do with it. Okay, I'm sorry. The district judge in this case says $300 is the appropriate rate. There is no evidence in this record that $300 is the appropriate rate, other than the district judge saying, well, CJS lawyers get $125 an hour. CJA lawyers get $125 an hour. It's the same kind of work, so I'm going to reduce it. What basis in the record is there? I respectfully disagree with you, Your Honor. He used... Judge Burns... What you're going to say is that he used an award an attorney had received seven to nine years ago? Well, he looked at Mr. Honig's declaration. The only place in this record I could find $300 at all was an award an attorney received seven to nine years ago. And that was in the Central District of California. I understood. And then I look at Bell v. Clackamas County says it's an abuse of discretion to use rates that are more than two years old. See, I was setting up Judge Smith's question for him. So, therefore, he can't go to seven to nine years. Judge Burns analyzed the affidavits that were presented to him. But one of his main points... He did not look at the affidavits. He didn't look at Paul Gabbard's affidavit at all. He did not look at Janet Sherman's affidavit at all. He did not even calculate them in in what he was doing. Well, that was part of the submission by Mr. Barnett. I don't think there's anything in Judge Burns' decision that said he did not look at it. Well, there's nothing that says he even looked at it. Well, he may not have mentioned it. Well, it seems to me that if he's got only their evidence in front of him, because you gave him none, and if, in fact, then, he's bound by that evidence, he better look at that evidence to come up with what he's going to do, or I can't do... I'm sure he did. I can't other than do an abuse of discretion, because at that point, Gabbard says 575 is reasonable. Sherman says 400 to 550 is reasonable. There's nobody who gets to 300. Well, also, Judge Burns looked at... He was the one that handled the motions. You know, we never appeared once in his court. Never once. We had one telephonic conference that was done between sentencing hearings, but that was it. But Judge Burns is very familiar with all the motion practices case. He reviewed and ruled on all of it, and he said, I've been a district court judge for so long, this was a criminal procedure case, and it was not a case that required expertise for asset forfeiture, and there are the decisions that say, and the Kerr factors that say, we look at the nature and sophistication of the work done. Is there any evidence that there's a lawyer out there in this field that you can hire for $125 an hour? See, that's not... Or 300? That's a very good question, Your Honor. And that's... Good answer. When they ask me, well, Mr. Smith, what were you thinking about? Why didn't you submit affidavits from asset forfeiture claimants practitioners to show what the accurate hourly fee is? And the reason is, asset forfeiture is all I do. For eight years, that's all I've done. And so there's a very small community in San Diego, in the Southern District, that practices this. So that puts me in a position to go from Mr. A to Ms. B to Mr. C and say, you're a practitioner, would you do me a favor and fill out an affidavit and tell me how much you pay? Well, but you don't have to do that. I take it because this is all you do. You're familiar with the awards given by the court. They're very unusual. On a daily basis. It's not a daily basis. None in the last two... No, no. Let me talk first, and then I'll let you answer. Any awards in the last two years that involve the counsel fee of $300? Not that I've heard of. I've heard of one maybe six years ago in the shark fin case, but that's the last one I heard about. So if you just did an inflation rate on the 7-year-old, 9-year-old, whatever it is, $300 award, wouldn't it come pretty close to what counsel was asking for? That's out of the Central District, and I don't know what they charge. And also, Mr. Burnett... Neither do we is the problem. Mr. Burnett offers no evidence that he's ever collected $300 an hour or $500 an hour. His retention contract doesn't provide for an hourly fee. I mean, they're just coming up with numbers. Well, let's go on to another idea. Let's look to the hours. I don't know what method the judge used. It seems to me, based on the precedent, he either got to look through the hours that are submitted to him and castigate the hours and take it down, which he can do, or if he wants, he can, rather than doing it line by line, he can say, well, I don't agree with what is done, and based on my experience, I'm just going to reduce it by a percentage amount. I don't know which one he took. Well, he didn't do that second one, Your Honor. He went through it. Well, just a minute. He went through, and I don't know how he came up with 60 if, in fact, he started with 101.55 and he's supposed to be doing it hour by hour. I don't know how he got to 60. There's only one way I can find that he got to 60, and that's say, I'm taking a 40% reduction. He never said that. Well, I know, but that's all I can get. Well, there's another way. At my point. There's another way, which was that if this had been on Melvin A. Myers or Gibson, Dunn, and Crutcher, they would have had a junior associate or a paralegal or someone else do it at a lesser rate. He didn't take into account that at a large firm, if they got Ted Olson to handle the case, it would have been $2,000 an hour. To me, it's an odd concept. I think Judge Smith is asking about the number of hours. Just a minute. Let the judges finish and then answer. That's an odd concept that forfeiture lawyers should belong to large firms, and then they should charge lower rates for some of the work, but without saying they should charge higher rates for the rest of the work, even if you took that theory that you shouldn't be in a small firm. But that's the way I found that he reduced the number of hours and the fees. Well, when you read it, it can come across that way. I respectfully submit that the way what the judge was saying is that Mr. Barnett spent time doing some things that would have required, say, the senior partner and other things that could have required a paralegal. And rather than charge the $500 an hour for every single hour or the $300 an hour, if you're going to be a sole practitioner, which is fine, he didn't criticize that. You'll build these different tasks at different rates. But why doesn't that work both ways? Why don't you then increase the time that would have been done by the senior partner? Because in those large firms, senior partners charge, you should forgive me, unconscionable rates, $2,000 an hour, and that's what he would have been charged for the senior partner. Isn't there a problem here that forfeiture lawyers really don't work for an hourly rate? It certainly is. Right? That's a big problem. They're like personal injury lawyers. They work for contingencies. And so affidavits about hourly rates are interesting, but they're largely hypothetical. That's correct if they don't get a return fee under the statute. If they just got, they can't charge $50,000 to a client to get $28,000 back. Correct. So they can't do it. And wasn't that why the statute says that the government should pay, or I guess they're the only ones that forfeit, the government should pay these people a reasonable amount. Now your argument, you know, only what you would have incurred. Forget that argument. But that the government should pay them for what it would cost to get a lawyer. I mean, what lawyer wants to take a case where the government takes $10,000 and the most he can get is $3,000 for it? Mr. Barnett. He took this one. His contract. He signed up. He could get more if he won the case. In fact, his fee agreement says so. His fee agreement says, I'll either take the CAFRA award or one-third. And I think he's a smart guy, so he probably said, you know, I think I'll get a CAFRA award in this one. That's the judgment he made. So you can't say he agreed to be limited to the $9,000. He agreed that the floor was the $9,000. No, Mr. Barnett in his contract is willing to take as much as they'll pour over his head. But Mr. Moser is the claimant. Mr. Moser is the one who incurs the limit. And Mr. Moser, the point that amicus makes, is Mr. Moser has got to go out and find a lawyer. If the most his lawyer can get is $9,000 for litigating this $28,000 case, he's not going to find a lawyer. Because the government is going to make him spend enough time to win it so that $9,000 is not very lucrative. But if he can get a reasonable hourly rate, this is the purpose of the statute as I see it, whether we can look at the purpose or not, I'll put aside, is to make available to people in this situation counsel because they know there's a fee award at the end of it. And so the question is how do we determine what a reasonable fee award is under those circumstances? It can't be $9,000 because then we wouldn't need the statute. The statute would just get the money from their clients, right? That's why the lodestar is applied first, which is what Judge Byrd said. He applied the lodestar. He applied the Kerr factors. And the contingency fee feature in the contract is one of the things he considered. That wasn't it. I mean, he didn't buy my argument. No one has yet. It seemed to me that that's how he reduced the lodestar was buying your argument. Well, after he calculated the lodestar. He took a third of it. Then he went to that and he said, hey, you know, it seems to me this is a controlling factor here I've got to reduce. He didn't go down to where you wanted him to go, but that was the only factor he used. How do I get around Van Guren? Van Guren says a district court may not rely on the contingency agreement to increase or decrease what he determines to be a reasonable fee. Well, I think Judge Burns followed what Judge Hurwitz was talking about, which is, you know, here we have this case. How is someone supposed to get an attorney? And so Judge Burns recognized that. All right, you have your contingency fee contract and we'll go through the lodestar factors and the curve factors. But I'm going to award more money. I'll award $5,000 more than the $9,300 you're going to receive for that very reason, I'm sure. Well, my worry is it seems to me that our precedent suggests how you can do the hourly rate, how you can do the hours. And once you get to the lodestar rate, you've got to use some factors to go beneath that. Because if you've done the hourly rate correctly, you've done the hours correctly, that's the rate. And unless you can come up with some other factor to reduce, you've got no way to reduce. And it's certainly our precedent says contingency fee cannot be the reason to reduce. And I could find nothing in what the good judge did that said he did other than use that. Well, the curve factors that he said that were remaining were the customary fee, the fee is fixed or contingent, amount in controversy and undesirability case. He talked about what? He talked about one, contingency. Two, Your Honor. He talked about the nature of the contract and he said this wasn't an undesirable case because Mr. Barnett took it. So it must have not been undesirable. But doesn't that prove too much? If what it means is that in every case the contingency is a controlling factor, then you'll only see those cases because the ones they don't take won't show up in front of you. I mean, the fact that he took it doesn't seem to me to have any relevance here. The statute is designed to make people take cases. The ones they don't take are probably the bad cases that they don't recover on, right? You'd hope. I don't know. I'm never there when they make that decision. But he did take it and it shows that unlike your concern or, you know, along the lines of your concern, how are these people going to find an attorney? Well, he found one, found Mr. Barnett. Well, but if Mr. Barnett knows he's going to get $14,000 on these cases in the future, is he going to take them? We don't discuss that. Can I go back to the hourly rates and the affidavits? Were they based on awards that counsel had received in the past? In other words, counsel says I've applied for fees in the past and the hourly rate was $500 and the judge approved it. I don't have those before me, but I recall Judge Burns saying that Mr. Honig cited to one that he received $300 an hour. But as Your Honor noted, it was a number of years earlier. Yeah, and by the way, I apologize to Judge Burns. There's a magistrate, Judge Burns, in Phoenix who's a good friend of mine. Every time I hear the name, I think magistrate judge. Another one of the Burns folks. Let me ask you a question, which I think is a big question that Judge Reinhart and Judge Hurwitz and I focused on in questioning your opposition. If the government didn't say anything, why don't we just right now award the fee asked for? Since the government didn't present anything except go down below and hit it on a contingency. Why don't we just award the fee they asked for and forget it? What case says I shouldn't do that? Well, I think I'm probably the first one, unfortunately, that went right to the statute and said the statute doesn't read like legal access. So we shouldn't follow that path. We should follow the statute and do what the statute says. And so you probably wouldn't find a case like that. Once we get over that point, then Judge Smith's question comes into play. Because I'm not sure that really gets there. Give me the reason why I shouldn't just award the fee. And let me add to it so you understand the concern. This is a civil case. This is not a criminal case. One party comes in and says, here's a reasonable fee. Here's my evidence. The other side doesn't put on any evidence of unreasonableness. In civil cases, we typically say the other side has defaulted. We shouldn't. So the reasonable fee is the one that somebody asked for. Why shouldn't we apply that here? I think it's appropriate, fortunately, that the district court should exercise its discretion, regardless of what the government says. And what case, Judge Smith asked you, because I'm looking forward to, what case do you cite for that proposition? I know you cite the statutory language. Well, unfortunately, I don't think anyone else has followed this path. Most other people who have argued, that's what I said, that's where I made the mistake. I made Judge Burns carry the ball. And other practitioners on my side have pursued the lodestar and the curve factors. And I took a different path and won't do that again. We're not critical, as you heard. And Judge Hurwitz gave a pretty good reason for that, too. I mean, the government must have better things to do. That's not the reason. Oh, yes, it is. You were thinking about that. Well, the court's supposed to think of every reason that a court might have thought of when we uphold a conviction that shouldn't be upheld. We say, well, maybe the court had this idea, although the court never said so. We want to give you the same benefit we gave the court. Well, thank you. I believe that the district court has and should exercise discretion. The same discretion as if you had opposed it. No difference? Well, if I would have come in and said that it's perfectly reasonable, Your Honor, we submit and sit down, I think the court still could have said, well, that may be what you think, Mr. Smith. Sit down. And gone through its analysis. They cite a case which is from the Fifth Circuit. If that's the circumstance, the district court shouldn't add to these things unless it shocks the conscience. Or I posit that the test we frequently use, except in extraordinary circumstances or unusual circumstances, to give the district court some flexibility where it's not just, well, you know, I know because I practiced really 300, 400, it's my view, or it should have taken six hours instead of five. But we just don't give the court total discretion. How would you limit the discretion in circumstances like this? Well, it is limited. It's limited when we read the cases describing how the lodestar applies, how the curve factors apply. I mean, Judge Smith. But what you're saying is that you would treat it exactly the same as if you had opposed it on those grounds. That may be your answer. Is that what you're saying? Yes. So, I mean, our argument wouldn't be as strong, certainly, because we have nobody in our court. But there is one other limitation you're arguing, as I understand it. At that point, the judge is bound by the evidence presented to him. He cannot go outside that evidence. And this judge, when you read his opinion. Now, just a minute. Is that what you're saying? He's trying to help you here. All I'm trying to say is it seems to me there is a limit in what you're suggesting. And that is that all a district judge can do at that point is look at the evidence presented. Yes, sir. Not make his own determination. Because his own determination, he cited a case, some wild name that I don't know. Ingram versus Oro. I don't know that last part. That's not an Idaho name. So I didn't know it. So, to be fair, I couldn't find that case to help him at all because it wasn't even like this case. But it seemed to me that he's at least bound by the evidence presented. But he can't substitute his own judgment at that point. He's got to take the hours that's presented to him. He's got to go through them one way or the other. And he's got to give, if you will, looking at what they've presented, a reasonable fee. He can't be guessing about what he would do. No, but that Ingram versus the name that no one can pronounce case, it does specifically say that the court can supplement the facts before it or add to it its own knowledge of the market and the court. Yeah, yeah, but in that particular case, there was at least he had a chance because there were no affidavits presented in Ingram. There was nothing for the district court to look at. All the district court had to do there was look on its own experience. This is not such a case. No, sir. All right, thank you very much. Thank you very much for your time. Thank you. We'll give you one minute for rebuttal. No rebuttal, thank you. Case just argued will be submitted.
judges: Reinhardt, Smith, Hurwitz